IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL T. PINES, | |
| Plaintiff, | ORDER and |
| | MEMORANDUM DECISION |
| vs. | |
| EMC MORTGAGE CORP., et al., | Case No. 2:08-CV-137 TC |
| Defendants. | |

This matter comes before the court on motions for summary judgment filed by

Defendants Experian Information Solutions (Experian), EMC Mortgage Corporation (EMC), and

Equifax Information Services (Equifax) and Plaintiff Michael T. Pines' cross motion for

summary judgment.  Mr. Pines has also filed a motion to dismiss or change venue and a motion

for sanctions under Federal Rule of Civil Procedure 11.

**BACKGROUND**

Mr. Pines[1] brought this action against EMC, Equifax, Experian, Cal-Western

Reconveyance, and James H. Woodall for allegedly misrepresenting his credit information in

violation of federal statutes and state common law.[2]  These allegations arose out of Mr Pines'

---

[1]Mr. Pines is an attorney licensed in California who is proceeding pro se in this case.

[2]Cal-Western Reconveyance and Mr. Woodall have also filed a motion for summary judgment.  Because that motion is not yet fully briefed, the court reserves judgment on the motion.

purchase, financing, and sale of four properties in Utah.  Experian and Equifax are consumer credit reporting agencies (CRAs) as defined by the Fair Credit Reporting Act (FCRA).  As CRAs, they maintain credit data on consumers, including Mr. Pines.  EMC is a loan servicing corporation and provides credit information on consumers to CRAs under FCRA.

Mr. Pines had loans with EMC on two properties, the Eagle Mountain Property and the West Jordan Property.  In June of 2006, Mr. Pines sent a payment to EMC through Mr. Pines's broker, Guardian Title.  Mr. Pines intended that the payment would  to pay off the loan on the West Jordan Property, but it was mistakenly applied to the Eagle Mountain Property loan.[3] Although the parties contest the details of what occurred after this mistake, it is clear that after EMC was notified of the error, the payment was reapplied to the West Jordan Property.

Mr. Pines then contested the payoff amount listed by EMC for the Eagle Mountain Property.  And beginning in August of 2006, he did not make payments on the Eagle Mountain Property.  He claims that this was at the request of an EMC employee pending resolution of the dispute over the payoff amount.  In January of 2007, EMC began foreclosure proceedings on the Eagle Mountain Property.

Mr. Pines filed an action in Utah state court in January of 2007 to stop the foreclosure proceedings.  Pines v. EMC Mortgage Corp., et al., No. 070400309 (4th Dist. Ct. Utah filed Jan. 25, 2007) (hereinafter "state court action").  EMC and Mr. Woodall are defendants in that suit. Mr. Pines's state court action included claims for failure to release security interest, breach of the duty of good faith and fair dealing, defamation, breach of contract, negligent misrepresentation,

---

[3]EMC and Mr. Pines dispute whether the mistake was EMC's or Guardian Title's.

intentional interference with existing and prospective economic relations, and estoppel.  All of these claims were based on EMC's alleged wrongful application of the payoff funds to the Eagle Mountain Property instead of to the West Jordan Property, wrongful foreclosure on the Eagle Mountain Property, and the reporting of that foreclosure to CRAs.  EMC filed a counterclaim for foreclosure.

In June of 2007 Mr. Pines sold the Eagle Mountain Property.  EMC maintained its foreclosure counterclaim to collect costs and fees associated with the foreclosure.

In February of 2008, Mr. Pines filed this case in federal court.  The factual allegations underlying the federal suit were the same as those underlying the state court action.  As in the state court action, the federal complaint alleged failure to release security interest, breach of the duty of good faith and fair dealing, defamation, breach of contract, negligent misrepresentation, intentional interference with existing and prospective economic relations, and estoppel.  In addition to these claims, the federal complaint alleged violations of the Fair Debt Collections Practices Act (FDCPA),[4] the FCRA, violations of the Utah Mortgage Lending and Servicing Act, and violations of the Utah Consumer Credit Code.  Mr. Pines moved to dismiss the state court action, but the state court denied his motion.

On January 23, 2009, the state court entered a order, including findings of fact and conclusions of law, granting partial summary judgment to EMC.  (EMC's Mem. in Supp. Summ. J., Ex. U) In that order, the state court ordered that Mr. Pines's claims for injunctive relief, failure to release security interest, breach of the covenant of good faith and fair dealing, defamation, and

---

[4]In a previous order, the court dismissed the FDCPA claim against EMC.  (Docket No. 85)

breach of contract be dismissed with prejudice.  On March 20, 2009, the state court entered an

order dismissing Mr. Pines' remaining claims "with prejudice and on the merits" for failure to

prosecute or comply with the orders of the court.  (Id., Ex. X)  Although Mr. Pines's state court

action is ongoing, the state judge held that  all claims asserted against EMC were concluded and,

on May 12, 2009, entered final judgment in favor of EMC and against Mr. Pines.

In the state court's January 23, 2009 findings of facts the court made several findings that

are relevant here.  These include:

9.    On June 1, 2006, Guardian Title, Pines' settlement agent, remitted check 42941 in the amount of $188,071.21 to EMC and incorrectly instructed EMC to pay off loan 0013617618, the loan for the Eagle Mountain Property, rather than loan 0015265267, which was the loan for the West Jordan Property that had been sold.

10.   EMC applied the amount to the Eagle Mountain Property as instructed by Guardian Title's Payoff Instructions.

. . .

12.   After Pines notified EMC of Guardian Title's error, EMC reinstated the servicing for the loans associated with the Eagle Mountain Property at no cost to Pines and applied the payoff funds to the West Jordan Property.

. . .

16.   Pines failed to pay the monthly installments on the Eagle Mountain Property in August 2006.

17.   Pines failed to pay the monthly installments on the Eagle Mountain Property in September 2006.

18.   On September 20, 2006, EMC informed Pines that he was past due for his August monthly installment.

19.   In a letter dated September 20, 2006, Pines admitted that he owed EMC $20,612.00.

20.     Pines failed to pay the monthly installments on the Eagle Mountain
        Property in October 2006.

21.     On October 13, 2006, EMC agreed to block reports to the credit reporting
        agencies "while the account is being researched with regard to the payoff
        issue."

22.     On October 19, 2006, after reviewing and reconciling the accounts, EMC
        informed Pines that accounts 0013617618 and 0013617857 for the Eagle
        Mountain Property were past due for the July 2006 through October 2006
        installments.

23.     EMC offered to waive the late charges on both accounts pending
        Plaintiff's payments.

24.     Pines failed to pay the November 2006 monthly installments for the loans
        associated with the Eagle Mountain Property.

25.     On November 22, 2006, EMC asked Pines to contact EMC to resolve his
        overdue payments.

26.     On November 28, 2006, EMC contacted Pines and informed him that it
        was initiating a foreclosure action and invited him to contact EMC
        regarding foreclosure alternatives.

27.     Pines failed to pay the December 2006 monthly installments for the loans
        associated with the Eagle Mountain Property.

28.     On December 7, 2006, EMC again informed Pines that he was delinquent
        in his monthly installments.

29.     On December 7, 2006 Pines admitted that he owed EMC $22,136.69 but
        disputed $3,509.89 in interest charges from May through November, 2006
        . . .

30.     Pines failed to pay the January 2007 monthly installments for the loans
        associated with the Eagle Mountain Property.

31.     On January 4, 2007, EMC again explained to Pines that he owed a total of
        $25,646.58 to satisfy the loans associated with the Eagle Mountain
        Property.

32.     On January 30, 2007, EMC informed Pines that his account was past due

and owing.

33.    EMC initiated foreclosure proceedings against the Eagle Mountain
       Property.  In response, Pines filed a Motion for Temporary Restraining
       Order to stop the foreclosure on the Eagle Mountain Property.

34.    On February 13, 2007, the state court held a hearing on Plaintiff's Motion for
       Preliminary Injunction. At that hearing, the parties agreed to resolution of four
       issues by stipulation: (1) that the foreclosure of the real property located in Eagle
       Mountain would be stayed; (2) that there would be no further collection actions
       against the plaintiff with regard to three loans; (3) that there would be no further
       negative reporting to credit agencies related to the three loans; and (4) that the
       plaintiff would post a $20,000.00 bond in this matter.

(EMC's Mem. in Supp. Summ. J., Ex. U)

In addition, the state court made conclusions of law. These included:

Plaintiff failed to pay for the principal, interest, taxes, and insurance on the Eagle
Mountain Property from July 2006 through the initiation of the foreclosure in
January 2007, which amounts due and owing pursuant to the Deed of Trust and
Promissory Note. EMC and MERS were therefore entitled under the terms of the
Deed of Trust and Promissory Note to foreclose on the Eagle Mountain Property
at the time they commenced that proceeding.

. . .

Plaintiff failed to make monthly payments on the Eagle Mountain Property from
July through the date on which the Eagle Mountain Property was sold. As such,
EMC and MERS accurately reported Plaintiff's failure to pay the monthly
installments and accurately reported that a foreclosure proceeding had been
initiated on the Eagle Mountain Property.  Plaintiff is not entitled to injunctive
relief to stop accurate reports of nonpayment to the credit reporting agencies or
with regard to a properly commenced foreclosure proceeding and EMC and
MERS are entitled to judgment dismissing Plaintiffs' Third Cause of Action for
injunctive relief.

(Id.)

       Mr. Pines' federal complaint charges that the foreclosure on the Eagle Mountain Property

was wrongful and wrongfully reported.  He also maintains that EMC reported the foreclosure in

violation of the stipulated agreement made in the state court.

## ANALYSIS

### I. Plaintiff's Motion to Dismiss

Mr. Pines filed a motion to dismiss without prejudice, or in the alternative transfer venue, under Federal Rule of Civil Procedure 41(a).  This motion was filed on March 31, 2009, nearly a month and a half after Experian filed its motion for summary judgment and on the same day EMC filed its motion for summary judgment.  The motion was filed over a year after the complaint was filed.  Mr. Pines contends that his motion should be granted because "[i]n this case plaintiff is not seeking to dismiss or transfer solely because the law is better in California (although that is one reason) but also for convenience."  (Plt.'s Motion to Dismiss, Docket No. 260, at 8)

Federal Rule of Civil Procedure 41(a) provides that after an answer, a stage long since passed in this litigation, or absent a stipulation, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  In general, "[a]bsent legal prejudice to the defendant, the district court normally should grant such a dismissal."  Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997) (quotation omitted).

> The parameters of what constitutes "legal prejudice" are not entirely clear, but relevant factors the district court should consider include: the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation.  Each factor need not be resolved in favor of the moving party for dismissal to be appropriate, nor need each factor be resolved in favor of the opposing party for denial of the motion to be proper.

Id. (citations omitted).  The court "must consider the equities not only facing the defendant, but also those facing the plaintiff; a court's refusal to do so is a denial of a full and complete exercise

of judicial discretion."  Id.  Mr. Pines states that "[i]t is Plaintiff's desire that this action be dismissed so that it may be re-filed in San Diego along with the new claims that will be brought against EMC."  (Plt.'s Reply is Support of Motion to Dismiss, Docket No. 260, at 2)  Mr. Pines also told the court in his motion that the planned San Diego action will assert claims that Mr. Pines unsuccessfully attempted to add to his complaint before this court. (The court denied Mr. Pines's motion to amend based both on untimeliness and futility because the proposed amendments had no merit).  (Docket No. 178)

Here all the equities are in favor of the Defendants.  This case has been actively proceeding for over a year and is now at the summary judgment stage.  Defendants have expended considerable resources in defending this action and should not be required to recreate those efforts in another court.  Furthermore, Mr. Pines's explanation for the need to dismiss is inadequate.  He requests that this court dismiss his action without prejudice because he has moved to California and California will now be a more convenient forum.  But Mr. Pines has been prosecuting this action from California since October of 2008.  He also argues that convenience will be served by having all the litigation he intends to bring against the Defendants in one court.  But the additional claims he intends to bring against Defendants were already considered and rejected by this court.  Accordingly, the court sees no proper grounds for a dismissal without prejudice.

Mr. Pines also requests a transfer based on the venue statute.  28 U.S.C. § 1404(a). Under the venue statute a transfer must be "[f]or the convenience of parties and witnesses, in the interest of justice."  Based on the information discussed above, the court finds that a transfer would not be in the interest of justice.

## II.  EMC's Motion for Summary Judgment

EMC contends that Mr. Pines's suit against it is barred by claim preclusion.  Federal

courts must give to state court judgments "the same full faith and credit . . . as they have by law

or usage in the courts of such State, Territory or Possession from which they are taken."  28

U.S.C. § 1738.  Accordingly, this court must "ascertain what preclusive effect [Utah] would give

its own decision" and give the decision the same preclusive effect here.  Fox v. Maulding, 112

F.3d 453, 456 (10th Cir. 1997) (quotation omitted).  Under Utah law

> claim preclusion bars a party from prosecuting in a subsequent action a claim that
> has been fully litigated previously.  For claim preclusion to bar a claim in a
> subsequent action, (1) the subsequent action must involve the same parties, their
> privies, or their assigns as the first action, (2) the claim to be barred must have
> been brought or have been available in the first action, and (3) the first action
> must have produced a final judgment on the merits of the claim.

Culbertson v. Bd. of County Comm'rs of Salt Lake County, 44 P.3d 642, 648 (Utah 2001).

"Claim preclusion involves the same parties or their privies and the same cause of action.

It precludes the relitigation of all issues that could have been litigated as well as those that were,

in fact, litigated in the prior action."  Buckner v. Kennard, 99 P.3d 842, 846 (Utah 2004)

(emphasis added).  Here, there is no question that Mr. Pines and EMC were both parties to the

state court action, meeting the first prong of the test.  In addition, many of the claims alleged by

Mr. Pines before this court were brought before and decided by the state court (failure to release

security interest, breach of the duty of good faith and fair dealing, defamation, breach of contract,

negligent misrepresentation, intentional interference with existing and prospective economic

relations, and estoppel).  Accordingly, these claims meet the second prong of the test.  In

addition, Mr. Pines has offered no explanation, nor does the court see any, of why the additional

claims presented here were not available to be brought in the first action.  The additional claims arise out of the same facts that gave rise to the state court claim.  They would also meet the second prong of the Utah test.

The third prong requires a final judgment on the merits of the claims.  The state court entered a final judgment in favor of EMC.  (EMC's Reply in Supp. of Summ. J., Ex. A)   The state court action is still active because Mr. Pines has claims pending against other defendants.  Under the Restatement

> A judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest. . . . So also in an action in which the plaintiff has joined a number of claims against the defendant, the rules of practice—for example, Rule 54(b) of the Federal Rules of Civil Procedure—may permit entry of judgment on particular claims as they are adjudicated, with the action continuing as to the remaining claims.

Restatement (Second) of Judgments § 13 cmt. e (1982).  Accordingly, the state court's entry of final judgment satisfies the third prong of the test.

In the event Mr. Pines's appeal rights are not exhausted, this would not render the judgment non-final for purposes of res judicata.  An appeals court in Utah recently recognized that a split existed in Utah law "on the general issue of the finality of judgments pending appeal" and concluded "that the better approach is that taken by the more recent Utah cases, which hold that a rendered judgment is final for purposes of res judicata until reversed on appeal, modified by the rendering court, or set aside by the rendering court."  Youren v. Tintic School Dist., 86 P.3d 771, 773 (Utah Ct. App. 2004).  This is also the position taken by the Restatement:

> There have been differences of opinion about whether, or in what circumstances, a judgment can be considered final for purposes of res judicata when proceedings have been taken to reverse or modify it by appeal.  The better view is that a judgment otherwise final remains so despite the taking of an appeal unless what is

> called an appeal actually consists of a trial de novo; finality is not affected by the
> fact that the taking of the appeal operates automatically as a stay or supersedeas of
> the judgment appealed from that prevents its execution or enforcement, or by the
> fact that the appellant has actually obtained a stay or supersedeas pending appeal.

Restatement (Second) of Judgments § 13 cmt. f (1982) (emphasis added).  Accordingly, that Mr.

Pines's appeal rights are not exhausted should not impact the finality of this decision for res

judicata purposes.

Under Utah law, the action against EMC brought by Mr. Pines in this court is precluded

by the judgment of the state court.  Summary judgment in favor of EMC is therefore appropriate.

## III.    Experian and Equifax's Motions for Summary Judgment

Experian and Equifax, the CRAs, argue that they are entitled to summary judgment based

on the state court's factual findings.[5]  Although the CRAs were not parties to the state court

action, the state court's judgment may have preclusive effect.  Issue preclusion

> arises from a different cause of action and prevents parties or their privies from
> relitigating facts and issues in the second suit that were fully litigated in the first
> suit.  In effect, once a party has had his or her day in court and lost, he or she does
> not get a second chance to prevail on the same issues.

Buckner, 99 P.3d at 846 (quotation and citation omitted).  "When an issue of fact or law is

actually litigated and determined by a valid and final judgment, and the determination is essential

to the judgment, the determination is conclusive in a subsequent action between the parties,

whether on the same or a different claim."  Restatement (Second) of Judgments § 27 (1982).

Here the issue of whether EMC's reporting to the CRAs was accurate has been litigated and was

_____

[5]The CRAs do not specifically argue the elements of issue preclusion.  However, they do
base their arguments on the state court's findings.  Furthermore, EMC fully briefed both claim
preclusion and issue preclusion.  Accordingly, Mr. Pines was afforded an opportunity to respond
to these arguments.

essential to the state court's judgment.

Although the CRAs were not parties to the state court action, issue preclusion may still apply. "A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." Restatement (Second) of Judgments § 29 (1982). Mr. Pines had a full and fair opportunity to litigate the issues decided in the state court action. Accordingly, the factual findings of the state court must be applied in evaluating the claims against the CRAs.

FCRA Claims

Mr. Pines brings claims against Experian and Equifax for violations of two provisions of FCRA. 15 U.S.C. §§ 1681e(b) & 1681i. Section 1681e(b) requires CRAs to maintain reasonable procedures to ensure accuracy of credit reports. Under Tenth Circuit law

> To prevail in a private civil action under § [1681e], a plaintiff must establish that (1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the plaintiff suffered an injury; and (4) the consumer reporting agency's failure caused the plaintiff's injury.

Cassara v. DAC Services, Inc., 276 F.3d 1210, 1217 (10th Cir. 2002) (emphasis added). The state court found "EMC and MERS accurately reported Plaintiff's failure to pay the monthly installments and accurately reported that a foreclosure proceeding had been initiated on the Eagle Mountain Property." (EMC's Mem. in Supp. Summ. J., Ex. U) Clearly, the question of whether the information provided by EMC to the CRAs and reported by the CRAs was accurate has was litigated in the state court. Because the state court determined the information was accurate, Mr. Pines cannot maintain an action under § 1681e(b).

-12-

Section 1681i of FCRA requires CRAs to undertake a reasonable reinvestigation of contested information in a consumer's credit report.  The Tenth Circuit has never addressed § 1681i.  But the Eleventh Circuit held:

> After a credit report has been prepared on a consumer, a credit reporting agency retains a duty under section [§ 1681i] of FCRA to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer.  When a consumer brings a claim for violation of this duty, a court is generally called upon to determine whether the credit reporting agency could have discovered an error in a particular report through a reasonable investigation.  Thus, a section [§ 1681i] claim is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry.

Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991) (footnote omitted) (emphasis added).  Again, the issue of whether the information regarding the foreclosure of the Eagle Mountain Property was accurate has been litigated and decided against Mr. Pines.  Because the information in his credit report was accurate, Mr. Pines has no claim under § 1681i.

State Law Claims

Mr. Pines has also brought a claim against the CRAs for defamation and negligence.

FCRA provides,

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).  Because Mr. Pines cannot show the information he contests is false, his claims for defamation and negligence cannot be maintained.

-13-

**IV.  Plaintiff's Motion for Rule 11 Sanctions**

Mr. Pines has filed a motion for sanctions against EMC under Federal Rule of Civil

Procedure 11.  Rule 11 allows the court to impose sanctions if an attorney or party submits

papers to the court for an improper purpose, frivolously, or without evidentiary support.  Mr.

Pines objects to EMC's memorandum in support of summary judgment, which referred to the

state court's order granting summary judgment as a "final order."  Because the state court had not

entered final judgment at the time the memorandum was written, Mr. Pines believes sanctions are

appropriate.

Mr. Pines's argument is not persuasive.  EMC's memorandum contained no material

misrepresentation.  EMC specifically informed the court that although the state court had

dismissed all claims against EMC with prejudice, final judgment had not yet been entered.

(EMC's Mem. in Supp. Summ. J. at 3 n.7)  It further informed the court that it was seeking a

final judgment from the state court.  The state court granted the motion and entered judgment.

Accordingly, the motion for Rule 11 Sanctions is denied.

EMC asks the court to award it attorney's fees incurred in defending this motion.  Rule 11

provides that "[i]f warranted, the court may award to the prevailing party the reasonable

expenses, including attorney's fees, incurred for the motion."  This is the second motion under

Rule 11 filed by Mr. Pines.  In denying the previous motion, the court cautioned Mr. Pines

against the further filing of such motions without evidentiary support.  (Docket No. 178)  This

motion is likewise without any support and the court finds that reasonable expenses, including

attorney's fees, for EMC's costs in responding to the motion are warranted.

## ORDER

Plaintiff's motion to dismiss is DENIED.  (Docket No. 251)  Defendants EMC, Experian, and Equifax's motions for summary judgment are GRANTED.  (Docket Nos. 191, 236, & 270)  Plaintiff's motion for summary judgment is DENIED in part, the court reserves judgment on Plaintiff's motion as it concerns Defendants Cal-Western Reconveyance and Mr. Woodall.  Plaintiff's motion for Rule 11 Sanctions is DENIED.  (Docket No. 260)  Plaintiff's motion for a hearing is DENIED as moot.  (Docket No. 295)  EMC's motion to strike is DENIED as moot.  (Docket No. 299)  EMC is ordered to submit an affidavit describing its reasonable costs associated with defending the motion for Rule 11 Sanctions within ten days from the date of this order.  Mr. Pines can file an opposition, if he chooses, within ten days after EMC's motion is filed.

DATED this 15th day of June, 2009.

BY THE COURT:

_Tena Campbell_

TENA CAMPBELL
Chief Judge